# Richmond

## D. Berlin v. The McCall Company.

January 11, 1934.

Present, All the Justices.

The opinion states the case.

*Morewitz & Morewitz*, for the plaintiff in error.

*Montague & Holt*, for the defendant in error.

Chinn, J., delivered the opinion of the court.

This is a suit in the form of a foreign attachment proceeding brought by D. Berlin, plaintiff in error (hereinafter referred to as plaintiff), against The McCall Company, principal defendant (hereinafter referred to as de-

fendant), to recover damages for alleged breach of contract.

There was a trial by jury which resulted in a verdict for the defendant, upon which the court entered judgment.

It appears that on March 11, 1927, plaintiff (who is the proprietor of a department store in the city of Newport News) entered into a contract with the defendant, in the form of a written order, whereby plaintiff agreed to buy a stock of "McCall patterns amounting to $400 at fifty per cent of labeled retail prices," of which amount $200 was "to remain as a standing credit during the operation of the agreement." The contract further provides that it shall continue in force for the term of five years, during which period the plaintiff agreed to buy an average of $20 per month of new monthly patterns, and a certain number of "fashion sheets" and other publications put out by The McCall Company, all of which were to be paid for on or before the 10th of the month succeeding the date of shipment; and also two cabinets for filing purposes at the price of $96, to be paid for in cash. The contract concludes with this paragraph:

"The standing credit may be liquidated by delivery to your factory at Dayton, Ohio, within thirty days after fulfillment of this agreement of a sufficient quantity of live patterns, in good salable condition, which shall be credited at 100 per cent of the regular wholesale rates."

The terms of the contract were regularly performed by both parties until some time in the early summer of 1930, when plaintiff became dissatisfied on account of the fact that The McCall Company had established two other agencies for the output of its merchandise in the city of Newport News, and wrote The McCall Company, protesting against the establishment of such agencies. There seems to have been considerable correspondence between the parties on this subject which does not appear in the record, but on August 13, 1930, the plaintiff wrote The McCall Company the following letter:

"I have your letter of 8/8/30, and in answer I wish to say that no matter what I write to you in regards the establishment of two more agencies, you of course will be always right, in your opinion.

"I can see how much the other agencies have helped the sales in my pattern department, since July first I have sold all of three patterns, which heretofore the average sale of patterns were about four per day.

"As I stated to you in my last letter, I have returned this month's shipment, of patterns and other goods sent with it, and I will not accept any more shipments. I also will return the balance of pattern stock which I have, including cabinets, etc.

"You may take such measures as you think best.
                    "Yours truly,
                         (Signed) "D. BERLIN."

In reply to this letter, under date of August 28, 1930, The McCall Company wrote plaintiff as follows:

"We have your letters of August 13 and 25, respectively.

"Because of the addition of two McCall outlets, you inform us that you will refuse to accept further shipments, and that it is your intention to return your pattern stock, including cabinets, etc.

"In view of this, we are prepared to prematurely cancel your contract upon the complete adjustment of your current account, and upon the receipt of your entire pattern stock and cabinets at our office in Dayton, Ohio, to which place they are to be shipped charges prepaid.
                    "Very truly yours,
                         "THE McCALL COMPANY."

Following the receipt of the above communication, the plaintiff shipped to The McCall Company the entire stock of patterns and equipment purchased under the contract, then on hand, and on September 2, 1930, wrote The McCall Company a letter saying:

"I am returning to you at your Dayton office the following." Said letter then sets forth a long itemized list of the merchandise and equipment returned, and concludes with the following paragraph:

"Please try to make as early adjustment as possible."

Plaintiff testified that at the time he returned the goods as aforesaid he had paid The McCall Company all he owed under the terms of the contract except the $200 "standing credit" therein specified; that the value of the patterns and cabinets returned, at cost price, amounted to $726; and claimed that after deducting the $200 he owed The McCall Company from said amount, said company is indebted to him for the balance of $526.

In his petition for attachment the plaintiff alleges that by said contract of March 11, 1927, The McCall Company had agreed to give him an exclusive agency for the sale of its patterns in the city of Newport News, and that *because of said company's breach of that agreement,* he had been damaged $526 on account of merchandise returned to the defendant, and also in the sum of $500 by reason of the loss of profits he would have derived under the contract.

There being nothing in the contract to indicate that the plaintiff was to have an exclusive agency, he abandoned at the trial his claim for $500 for loss of profits, and relied entirely upon his alleged right to recover the said sum of $526 for the merchandise and cabinets returned to The McCall Company. The plaintiff contended in the court below, and contends here, that he shipped the goods back to The McCall Company with the understanding that he was to be paid for them, and relies upon the correspondence to show that such was the agreement between The McCall Company and himself when he returned the goods. It was, and is, contended by The McCall Company, on the other hand, that the plaintiff returned the merchandise in part consideration of being relieved of future compliance with his original contract.

In his petition for writ of error and the oral argument here, plaintiff bases practically his whole case upon the

contention that the defendant's letter of August 28, and plaintiff's letter of September 2, plainly show that plaintiff returned the patterns and cabinets with the understanding between the parties that he was to be paid for them, and that the trial court should have so construed said letters and granted an instruction (c) offered by the plaintiff, instructing the jury to that effect.

We find no merit in the contention. In the first place, it leaves out of view a part of the correspondence upon which plaintiff's cause of action is founded and also the other evidence introduced at the trial, consisting of the original contract and parol testimony, all of which should be considered by both the court and the jury in arriving at the intention of the parties in regard to the matter at issue.

Moreover, the construction which plaintiff attempts to place upon the two letters above referred to is manifestly contrary to the purpose of the parties as evinced by the correspondence, when read as a whole in the light of the other facts and circumstances.

Taking the letters exchanged between the parties, so far as they appear in the record, in chronological order, we first find plaintiff's letter of August 13th. In that letter plaintiff declares his purpose to abandon the contract then existing between The McCall Company and himself, in plain and unequivocal terms. After complaining of the establishment by the defendant company of two other agencies in Newport News, plaintiff notified the defendant that he had returned "this month's shipments of patterns and other goods sent with it;" that he would not accept any more shipments;" that he would "also return the balance of the pattern stock which I have, including cabinets, etc.," and then concludes with the words: *"You may take such measures as you think best."*

There is no intimation in this letter that plaintiff expected to be paid for the articles he intended to send back, or that he had any claim of any sort against the defendant. On the other hand, the language and tone of the letter

seem to clearly indicate that plaintiff's only desire was to wipe out the contract, regardless of the consequences to either The McCall Company or himself, and that said company could do as it pleased about it.

Defendant's reply to this letter is directly responsive, and equally clear and explicit. After referring to the reasons given by plaintiff for throwing up the contract, defendant informed plaintiff that it would "prematurely cancel your contract" upon three conditions: First, the complete adjustment of plaintiff's current account; second, the return of the entire pattern stock and cabinets; and, third, the prepayment of shipping charges.

Bearing in mind that at the time the foregoing letters were written plaintiff owed The McCall Company a balance of $200 on account of the "standing credit" for the first shipment of goods, and that the plaintiff was not entitled, under the terms of the contract, to liquidate this amount by the return of patterns until after the "fulfillment" of the agreement, which plaintiff had breached, it seems only reasonable to conclude that the words "upon the complete adjustment of your current account," as used in defendant's letter, were intended to refer to the said balance of $200 owing by the plaintiff, and were not intended to mean that The McCall Company was to pay for the goods returned, as plaintiff contends. There is certainly nothing in the letter which can be construed as a promise on the part of The McCall Company to pay the plaintiff anything, or any admission of liability to the plaintiff.

As far as the record discloses, the two letters above referred to constitute the entire understanding and agreement between the parties as to the matter in controversy. Plaintiff's letter notified the defendant company that he would no longer perform his contract. Defendant's letter informed plaintiff it would agree to the premature cancellation of the contract upon certain conditions, one of which was the receipt of his pattern stock and cabinets at its office at Dayton, Ohio. Plaintiff, thereupon, shipped

the goods according to directions without further negotiations. It, therefore, seems plain that plaintiff returned the goods in order to be relieved of his contract, as found by the jury, and not with the understanding or expectation that he was to be paid for them.

Counsel for the plaintiff places much stress upon the concluding paragraph of plaintiff's letter of September 2, "Please try to make as early adjustment as possible," upon the theory that in using this language plaintiff made a claim for reimbursement for the patterns and cabinets returned.

As already noted, one of the conditions upon which The McCall Company consented to abrogate the contract was the "complete adjustment" of plaintiff's current account. This being the case, the "early adjustment" requested by the plaintiff can only be reasonably construed as referring to the "adjustment" of his account as stipulated in the above mentioned letter of said company. But whatever may have been in plaintiff's mind, there is nothing in his letter of September 2nd which can be construed to mean a demand upon The McCall Company for money due him. If he had meant to make such a claim he could easily have said so.

Complaint is made of the refusal of the trial court to grant instruction "C," offered by the plaintiff.

As a discussion of this assignment would require a repetition of much of what has already been said, and would serve no useful purpose, we deem it only necessary to say that we have carefully considered the argument of counsel in support of the instruction, and think it was rightly refused for the reason that it is misleading, and there is no evidence upon which to predicate it.

Finally, it is said, that "if there was no meeting of the minds of the parties," it would be unjust to permit the defendant to keep the goods, which plaintiff "in good faith returned," without compensating him for them. In view of the construction placed by the court and the jury, and herein approved, upon the letters upon which plain-

tiff bases his right of recovery, this argument is beside the mark.

It may be said, however, that when the defendant received the goods, plaintiff not only owed him $200 on account, but was liable in damages for the breach of his contract. It, moreover, appears that defendant afterwards offered to return the goods to the plaintiff on the contract terms if he would pay the balance due on his account. Plaintiff refused his offer and elected to bring this suit, and having so elected, he must abide the consequences.

The issue was submitted to the jury by both sides under fair and proper instructions from the court, and we find no prejudicial error in the record. The judgment of the trial court must, therefore, be affirmed.

*Affirmed.*